

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0605-14

**THE STATE OF TEXAS**

**v.**

**CUONG PHU LE, Appellee**

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FOURTEENTH COURT OF APPEALS
HARRIS COUNTY**

NEWELL, J., delivered the opinion of the Court in which KELLER, P.J., and JOHNSON, KEASLER, HERVEY, RICHARDSON and YEARY, JJ., joined. MEYERS, J., filed a dissenting opinion. ALCALA, J., filed a dissenting opinion.

## O P I N I O N

This case involves a search warrant based in part upon an alert from a drug-detecting dog. After the execution of the search warrant, but before a hearing on the motion to suppress, the United States Supreme Court held in *Florida v. Jardines* that law-enforcement officers' use of a drug-sniffing dog on the front porch of a home without a search warrant violated the Fourth Amendment. Consequently, this Court must determine whether the

search-warrant affidavit–minus the drug-dog's alert–clearly established probable cause. The trial judge held that it did not, and the court of appeals agreed. *State v. Cuong Phu Le*, No. 14–13–00635–CR, 2014 WL 1390121 (Tex. App.—Houston [14th Dist.] April 8, 2014) (not designated for publication). We reverse because we find that, when looking at the warrant affidavit as a whole, the independently and lawfully acquired information stated in the affidavit clearly established probable cause.

## Investigation

In November 2012, Sergeant Robert Clark of the Harris County Sheriff's Department received a report from a concerned citizen that suspicious activity was taking place in a two-story house at 8603 Jubilee Drive, Houston.[1]  The concerned citizen observed young Asian males arriving at the residence though no one had moved any furniture into the home. The young Asian males would arrive at the residence in the early evening hours, remain for a short period of time, and then depart. They did not engage in any normal household activities such as yard work or washing cars. The concerned citizen did not see any lights inside the residence even when the young males visited the home during the evening hours.

Sergeant Clark, who worked in the narcotics-investigations division, had extensive formal training and investigatory experience in this area, including specific training on cases involving indoor cultivation and possession of marijuana. A narcotics investigator with 35 years of experience, Sergeant Clark had handled 150 investigations involving indoor

---

[1] The concerned citizen did not know who rented the home, but CenterPoint Energy records revealed that the utilities were in appellee's name.

marijuana cultivation. Assigned at the time to the FBI's Houston Intelligence Support Center, Sergeant Clark had received advanced training in the detection, operation, and dismantling of indoor grow operations. Based upon this experience, Sergeant Clark was familiar with the characteristics of indoor marijuana grow operations.

After receiving the report, Sergeant Clark ran both a criminal history and a driver's license check on the concerned citizen. He found no criminal history and no driver's license suspensions. A query of the Harris County Appraisal District's online records revealed that the concerned citizen had been a home owner in Harris County for numerous years. The concerned citizen in this case requested anonymity due to safety considerations, but nevertheless remained accountable to Sergeant Clark.

On November 6, 2012, Sergeant Clark traveled to the suspected residence at 8603 Jubilee Drive. He observed that the mini blinds were tightly drawn on every window in the residence. This was consistent with the concerned citizen's observation that no lights could be seen inside the residence.

On November 8, 2012, Sergeant Clark subpoenaed the electrical utilities records for the house from CenterPoint Energy. Appellee was the listed subscriber on the records for the suspected residence, although his driver's license listed his home address as 8335 Wayfarer Lane, also in Houston. Sergeant Clark drove to appellee's listed residence and saw a black Toyota SUV bearing Texas registration 170HZY parked in the driveway. Though the car was registered to someone else, it matched the description and license plate of a car

the concerned citizen had seen parked by one of the Asian males at the suspected residence.

On November 13, 2012, Sergeant Clark traveled again to 8603 Jubilee Drive.  From the sidewalk, he could plainly hear the central air conditioning unit running continuously even though the ambient temperature at the time was fairly cool.  Sergeant Clark found this consistent with an indoor hydroponic grow operation because, based upon his experience and training, he knew that high-intensity metal halide grow lamps typically generate excessive heat that must be dissipated to prevent damage to the plants.

Sergeant Clark walked up the front sidewalk, which was open to all visitors, and stood at the front door.  From there, Sergeant Clark could smell the distinct odor of raw marijuana. He was familiar with the odor in light of his work history in conducting investigations of indoor marijuana grows.

Sergeant Clark conducted several nights worth of nighttime surveillance sometime between November 13th and November 27th.  He observed no lights inside the two-story residence other than one at the front door and a single rear first-floor light.  Sergeant Clark understood that indoor marijuana grow operators often do not live at the grow house, though they must tend to the live plants on a daily basis.

Sergeant Clark spoke with Sergeant Bobby Roberts, a Narcotics Supervisor with the Houston Police Department.  A police officer with 26 years of experience, Sergeant Roberts had over 900 hours of police training, including many hours of formal training in the detection and apprehension of persons involved in the trafficking of illegal narcotics.  On

November 27, 2012, Sergeant Roberts conducted covert surveillance of the house at 8603 Jubilee Drive. He observed the black Toyota SUV with the 170HZY license plate. After the SUV departed the residence, Sergeant Roberts conducted a traffic stop based upon traffic violations. Appellee was driving the car, and Sergeant Roberts smelled the strong odor of raw marijuana. It came from both the vehicle and appellee himself.

At that point, Sergeant Roberts called for a narcotics-detection canine.

After the dog alerted to the smell of raw marijuana at the front door of the suspected house, the magistrate issued a search warrant for 8603 Jubilee. Police executed the warrant and seized 358 marijuana plants from inside the residence. Appellee was indicted for felony possession of marijuana in January 2013.

### Suppression

Two months after the State indicted appellee, the United States Supreme Court decided *Florida v. Jardines*, ___ U.S. ___, 133 S.Ct. 1409 (2013). In *Jardines*, the Court held that law-enforcement officers' use of a drug-sniffing dog on the front porch of a home, to investigate a tip that marijuana was being grown in the home, was a trespassory invasion of the curtilage that constituted a "search" for Fourth Amendment purposes. *Id.* at 1416. At the suppression hearing, appellee argued that (1) the use of the dog alert violated the Fourth Amendment under *Jardines*, and (2) the remaining evidence in the affidavit was based on stale facts that were insufficient to support probable cause. Both parties assumed that the dog alert should be excluded from the review and argued whether the affidavit, without it,

indicated probable cause.

The trial judge granted the motion to suppress, and the Fourteenth Court of Appeals affirmed.  The court of appeals recognized, as did the parties, that the central issue in the case was whether a warrant could have been issued on the basis of the information in the affidavit that remained after removal of the illegal dog sniff at the door.  *Le*, 2014 WL 1390121, at *2-3.  The court of appeals agreed with the State that it could properly consider the information from the concerned citizen despite his or her anonymity under a proper totality of the circumstances analysis.  *Id.* at *3.  However, the court of appeals did not consider Sergeant Clark's observations on November 13th when he smelled raw marijuana at the front door of the residence because, according to the court of appeals, that information had become stale by the time the warrant was issued.  *Id.* at *5.  After disregarding both the illegal dog sniff and Sergeant Clark's observations on November 13th, the court of appeals held that the remaining facts in the affidavit did not clearly establish probable cause that marijuana would be found at the suspected place.  We granted the State's petition for discretionary review, asking whether the court of appeals was correct on that count given that this case involves the continuous enterprise of growing marijuana.[2]

### Standard of Review

Appellate courts review a trial court's ruling on a motion to suppress by using a

---

[2] The State did not raise the issue of good faith to the trial court below at the suppression hearing.  Because any Article 38.23(b) good-faith issue has been procedurally barred, we consider only the propriety of the search based upon the warrant.  *Le*, 2014 WL 1390121, at *6.

bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Ordinarily, the preference for searches based upon warrants requires reviewing courts to give "great deference" to a magistrate's determination of probable cause. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *see also Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). "[I]n a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." *United States v. Ventresca*, 380 U.S. 102, 106 (1965); *see also Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012) ("'[T]he magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon *de novo* review.'") (quoting *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010)).

But that deference to the magistrate is not called for when the question becomes whether an affidavit, stricken of its tainted information, meets the standard of probable cause. *McClintock v. State*, 444 S.W.3d 15, 19 (Tex. Crim. App. 2014). This is, in part, because a "magistrate's judgment would have been based on facts that are no longer on the table," and there is "no way of telling the extent to which the excised portion influenced the magistrate judge's determination." *United States v. Kelley*, 482 F.3d 1047, 1051 (9th Cir. 2007). More importantly, it reinforces the principle that "[a] search warrant may not be procured lawfully by the use of illegally obtained information." *Brown v. State*, 605 S.W.2d 572, 577 (Tex.

Crim. App. 1980), *overruled on other grounds by Hedicke v. State*, 779 S.W.2d 837 (Tex.

Crim. App. 1989).  "When part of a warrant affidavit must be excluded from the calculus,

. . . then it is up to the reviewing courts to determine whether 'the independently acquired and

lawful information stated in the affidavit nevertheless clearly established probable cause.'"

*McClintock*, 444 S.W.3d at 19.[3]  A search warrant based in part on tainted information is

nonetheless valid if it clearly could have been issued on the basis of the untainted information

in the affidavit.  *Brown*, 605 S.W.2d at 577.

Yet, reviewing courts are still required to read the purged affidavit in accordance with

*Illinois v. Gates*.  Courts should interpret the affidavit in a commonsensical and realistic

---

[3] Some federal courts have interpreted this evaporation of deference as endorsement of a *de novo* review of a purged warrant affidavit.  *See, e.g., United States v. Ruiz*, 664 F.3d 833, 838 (10th Cir. 2012) ("'Whether a corrected affidavit supports a finding of probable cause is a question of law that we review *de novo*.'") (quoting *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008)); *United States v. Spears*, 673 F.3d 598, 605 (7th Cir. 2012) (same). This move away from deference to the magistrate's determination has its roots in cases in which the affiant provided false or misleading information in violation of *Franks v. Delaware*.  *See, e.g., United States v. Namer*, 680 F.2d 1088, 1095 n.12 (5th Cir. 1982) (rejecting the presumption of deference when warrant affidavit included reckless and material misrepresentations).  Without explicitly endorsing a *de novo* review of purged warrants, this Court has extended this no-more-deference rule to situations in which the affidavit was based upon illegally obtained information.  *See, e.g., McClintock*, 444 S.W.3d at 19 (holding that no deference is required when magistrate's probable cause determination was based in part on illegal drug-dog alert); *Castillo v. State*, 818 S.W.2d 803, 805 (Tex. Crim. App. 1991) (refusing to defer to the magistrate's probable cause determination when affidavit contained information from illegal wiretaps), *overruled on other grounds by Torres v. State*, 182 S.W.3d 899, 901-02 (Tex. Crim. App. 2005); *cf. Swearingen*, 143 S.W.3d at 811 (rejecting *de novo* standard of review of *untainted* search warrants).  However, applying the flexible, totality-of-the-circumstances approach required by *Illinois v. Gates* resolves this case even without affording the magistrate the traditional level of deference.  *United States v. Kolodziej*, 712 F.2d 975, 976-77 (5th Cir. 1983) (applying *Gates*' totality-of-the-circumstances approach to review of a purged affidavit).

manner, drawing reasonable inferences from the information. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). Indeed, an appellate court should not invalidate a warrant by interpreting the affidavit in a hyper-technical manner. *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013). Probable cause exists if, under the totality of the circumstances, there is fair probability that contraband or evidence of a crime will be found at a specified location. *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011). It is a flexible, non-demanding standard. *Id.*

**Independent Information Clearly Established Probable Cause**

We recently held in *McClintock v. State* that–after excising evidence that a police drug-dog sniff at McClintock's door indicated the presence of narcotics–the balance of a search-warrant affidavit failed to clearly establish probable cause. In *McClintock*, the remaining facts underlying the probable cause finding by the magistrate were: (1) an unverified tip; (2) the activity of McClintock coming and going, "at hours well before and after the business hours of the business on the first floor," which was characterized as being "consistent with possible narcotics activity," and (3) Officer Arthur's smell of what was known to him "from training and experience to be, marijuana" from the outside of "the location." *McClintock*, 444 S.W.3d at 17-19. We noted that the reference to "the location" in the affidavit did not clearly establish probable cause as to the presence of narcotics at the defendant's residence when considered along with the other remaining information because that term was ambiguous in the context of the warrant affidavit. *Id.* at 19. But the search-

warrant affidavit in this case presents more information and less ambiguity.

Notably, the tip in this case came from a concerned citizen in good standing in the community. A citizen-informer is presumed to speak honestly and accurately; the criminal snitch who is making a quid pro quo trade enjoys no such presumption. *State v. Duarte*, 389 S.W.3d 349, 356 (Tex. Crim. App. 2012). The citizen informant in this case had no criminal history or driver's license suspensions and had been a home owner in Harris County for numerous years. The citizen informant remained accountable to Sergeant Clark despite requesting anonymity due to safety considerations. And in contrast to the tipsters in *Jardines* or *McClintock*, the citizen informant in this case provided sufficient information to evaluate the basis of the informant's knowledge or veracity.[4]

More importantly, the concerned citizen provided detailed information that Sergeants Clark and Roberts verified over their three-week investigation. Consistent with the concerned citizen's observations, appellee did not appear to live at the Jubilee residence even though he was responsible for the utilities and he came and went in the black Toyota SUV bearing Texas registration 170HZY. The mini blinds were tightly drawn on every window. The central air conditioning unit was running continuously on November 13th.[5]   At

---

[4] *McClintock v. State*, 405 S.W.3d 277, 282 (Tex. App.–Houston [1st Dist.] 2013) ("Affiant received information that marijuana was being grown inside the 2nd floor residence located at 412 West Clay, Houston, Harris County, Texas." ); *Jardines*, 133 S.Ct. at 1413 ("In 2006, Detective William Pedraja of the Miami–Dade Police Department received an unverified tip that marijuana was being grown in the home of respondent Joelis Jardines.").

[5] The court of appeals noted without conclusion that, "[t]he 2012 affidavit claims that it was 38 degrees Fahrenheit on November 13, 2012. However, appellee's motion to suppress

nighttime, no lights were visible inside the two-story residence other than one light at the front door and a single rear first-floor light.  While there could be innocent explanations for these facially unremarkable facts, reviewing courts are not precluded from drawing inculpatory inferences from the stated facts described in the affidavit as characteristic and consistent with the operation of an indoor marijuana grow operation.[6]  *Rodriguez*, 232 S.W.3d at 61.

Finally, Sergeant Clark verified the smell of raw marijuana at the front door of the residence.[7]  After three weeks of surveillance, Sergeant Roberts also smelled raw marijuana on appellee's person and in appellee's car after he observed appellee leave the suspected

[6] For example, the affidavit included information that grow operators often do not reside in the grow house, but still must tend to the live plants on a daily basis.  Additionally, the affiant averred that the grow operators run air-conditioning units to prevent damage to the growing marijuana plants from the excessive heat generated by metal halide grow lamps.  A more thorough affidavit could have provided detail regarding whether the power consumption at the residence was significantly higher (no pun intended) than average.  *See, e.g., State v. Hook*, 839 P.2d 1274, 1276 (Mont. 1992) (noting search-warrant affidavit "recited in detail the power usage, the times of residence by the defendant, previous usage by former occupants, normal residential usage, and comparisons as to these facts both specifically and generally").  But the focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit. *Rodriguez*, 232 S.W.3d at 62.

[7] This detail stands in contrast to the ambiguous reference to "location" at issue in *McClintock*.  There, the affiant's failure to specify whether he detected the odor of marijuana from a separate, upstairs residence created too much ambiguity to establish probable cause. *McClintock*, 444 S.W.3d at 19-20.  But here, the affiant stated that Sergeant Clark smelled the odor of  raw marijuana while standing at the front door of the place to be searched.  The affiant went on to state that he detected the same odor on appellee after stopping appellee for a traffic violation that occurred shortly after the affiant observed appellee leave the place to be searched.

included a weather report for 'Houston Hull, Texas,' which detailed that on November 13, 2012, the high was 60 degrees Fahrenheit and the low was 51 degrees Fahrenheit." *State v. Cuong Phu Le*, 2014 WL 1390121, at *1 n.2.  We agree with the State that the continuously running air-conditioning unit was a relevant fact under either temperature.

place.  The odor of marijuana emanating from a residence, as well as one of its occupants, can provide probable cause to believe an offense has been or is being committed.  *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005).  As the United States Supreme Court observed in *Johnson v. United States*, "If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant.  Indeed it might very well be found to be evidence of most persuasive character."  333 U.S. 10, 13 (1948); *see also Davis v. State*, 202 S.W.3d 149, 157 (Tex. Crim. App. 2006) (upholding search warrant based upon odor officer associated with manufacture of methamphetamine in conjunction with background information that did not establish probable cause by itself due to insufficient specificity).  While the odor of marijuana may not be enough to justify a warrantless search based upon exigent circumstances, it can still provide probable cause to support a search warrant.  *Estrada*, 154 S.W.3d at 608.

In sum, the independent and lawfully acquired information in the search-warrant affidavit–when viewed as a whole and in a common-sense manner–clearly established probable cause.  Appellee's argument that Sergeant Clark's observations on November 13th had become stale resulted in consideration of each fact or episode in the warrant affidavit in isolation.  Indeed, a common-sense reading of the entire affidavit as a whole reveals facts pointing to the "manufacture" of drugs rather than mere possession.  As this Court observed

in *Jones v. State*, "'evidence of ongoing criminal activity will generally defeat a claim of staleness.'" 364 S.W.3d 854, 861 (Tex. Crim. App. 2012) (quoting *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001)). Courts across jurisdictions have rejected staleness claims when ongoing marijuana grow operations are involved. *See, e.g., United States v. Minis*, 666 F.2d 134 (5th Cir. 1982); *United States v. Myers,* 106 F.3d 936 (10th Cir. 1997); *United States v. Greany*, 929 F.2d 523 (9th Cir. 1991); *State v. Duarte*, 238 P.3d 411 (Or. Ct. App. 2010); *Ragland v. Commonwealth*, 191 S.W.3d 569 (Ky. 2006). Rather than look at each episode in isolation, a cumulative view of the scent evidence reinforces the determination of probable cause.[8] *United States v. Cantu*, 405 F.3d 1173, 1177–178 (10th Cir. 2005) (viewing supporting facts in cumulative fashion rather than in isolation).

It has been suggested that the smell of the marijuana by itself on November 27th was insufficient to establish probable cause to support the issuance of a search warrant. But no one is arguing that. Rather, this evidence–considered in combination with the other facts–demonstrates probable cause. In *Davis v. State*, this Court upheld a search-warrant

---

[8] As the State points out, "[A]ppellee did not smell of marijuana hours after leaving the house [as the Court of Appeals stated], but smelled of it after hours of being at the suspected grow house." The warrant affidavit reads:

> On 27 November 2012, your Affiant observed the Black Toyota SUV bearing Texas registration 170HZY. Your Affiant established covert surveillance of the suspected place. The vehicle was stopped for traffic violations once it departed several hours later. The driver of the vehicle was identified as CUONG LE Asian male date of birth 10/30/1982. Your Affiant smelled a strong odor that he knows through training and experience to be that of raw marijuana coming from the vehicle and on the person of LE.

Appellee likewise forthrightly acknowledges this fact, but says that the "mistake amounts to a distinction rather than a difference."

affidavit based in part upon a trained officer's recognition of an odor he associated with the manufacture of methamphetamine. *Davis*, 202 S.W.3d at 157. The affidavit also included information from a Crime Stopper's tip as well as observations from confidential informants that this Court acknowledged was insufficiently explicit when considered in isolation. *Id.* Significantly, this Court agreed with the parties in *Davis* that this background information was insufficient to establish probable cause because the background information was essentially stale. *Id.* at 155 ("None of the background information gives a time frame that would corroborate the existence of methamphetamine on the premises when the warrant was requested."). But when this Court considered that background information along with the trained officer's perception–on the day the affidavit was drafted–of the distinctive odor he knew from his experience to be associated with the manufacture of methamphetamine coming from the residence, this Court held that information sufficient to establish probable cause. *Id.* at 157 ("We also note that the background information, which all agree was insufficiently specific when considered in isolation, was nevertheless relevant to the probable cause determination because it tends to corroborate [the officer's] statement.").

Considering the same type of "background" information in this case along with Sergeant Roberts' observations on the day the warrant was issued clearly establishes a fair probability that contraband would be found at the residence. *Davis*, 202 S.W.3d at 157. Appellee argues that the information acquired prior to Sergeant Roberts's observation should be disregarded as stale even though that information would arguably establish probable cause

if it had been gathered shortly before the search warrant was signed. *Davis* makes clear that appellee's approach is inconsistent with *Illinois v. Gates*, and that the November 13th information–including Sergeant Clark's legal human sniff–can be considered in conjunction with the smell of raw marijuana observed on appellee and in appellee's car shortly after appellee had left the suspected residence. Under a proper totality of the circumstances analysis, the lawfully obtained information contained in the search warrant in this case clearly established probable cause to search.

## Conclusion

This case provides a useful book-end to our decision in *McClintock*. At bottom, the drug-dog sniff in this case was not nearly as integral to the justification for the search warrant as it was in *McClintock* or even *Jardines*. The olfactory and visual observations of Sergeants Clark and Roberts verified a concerned citizen's firsthand description of the atypical activity around the Jubilee residence, activity consistent with the existence of a marijuana growing operation in the residence. Because this untainted information in the search-warrant affidavit clearly established probable cause, we reverse and remand to the trial court.

Delivered: April 29, 2015
Publish