

# NUMBER 13-17-00181-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THE STATE OF TEXAS,                                                          Appellant,

v.

RAMIRO GARCIA LOPEZ JR.,                                              Appellee.

### On appeal from the 430th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION
### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Memorandum Opinion by Justice Benavides

Appellant, the State of Texas, challenges the trial court's grant of appellee Ramiro Garcia Lopez Jr.'s motion to suppress the search warrant.   In its single issue, the State argues that the trial court applied the wrong legal standard in assessing the warrant.   We reverse and remand.

## I. BACKGROUND

Gilberto Garces was found dead of apparent gunshot wounds around 7:30 p.m. on April 6, 2016. Garces's body was located in a rural area of Mercedes; his hands were bound with electrical wire.[1]

A search warrant was issued April 8, 2016, for Mid-Valley Tire Shop seeking:

> any and all firearms, any and all unknown make and caliber ammunition and/or spent casings, projectiles, and/or shrapnel, any and all make or model magazines, clips or firearm loading devices, any and all firearm attachments and/or accessories, any and all blood stains; any and all blood stained clothing, fabrics and/or articles, DNA swabs, any and all articles used to restrain an individual including electrical wire, any electronic device missing its electrical wire, any and all records, writings, paper documents and/or photographs identifying the suspect(s) and/or victim(s), any and all cellular telephones, to include electronic recording devices and photographs; any illegal drug or paraphernalia, any and all scales, any and all packaging material, U.S. Currency and financial instruments which are used to promote illegal activities which relate to the illegal and illicit trafficking of marihuana and other controlled substances in violation of the Texas Health and Safety Code and violation of the laws of the State of Texas, Texas Penal Code.

We summarize the facts set out in the affidavit in support of the search warrant because they are necessary to our analysis of the State's issue on appeal. Mid-Valley Tire Shop (Mid-Valley) was owned or controlled by one or more of the following persons, "Owner, Ramiro Ramirez, Pedro Luis Lopez, Ramiro Lopez Jr., [and] any and all other parties unknown to affiant." Garces's family members told the investigating officers that Garces told them he planned to go to the tire shop that afternoon "to get some money from a friend." One of the family members spoke to Garces at 3:13 the afternoon of his

---

[1] These facts come from the testimony of Sheriff's Investigator Javier Vargas at the hearing on the motion to suppress.

death.  Calls to Garces later that day went unanswered.  Garces was discovered dead in a ditch in a rural area of Mercedes at 7:30 p.m. that same day.  Family members described the tire shop Garces referred to as a yellow building on the east side of FM 491 on Expressway 83 owned by the Lopez brothers Ramiro Lopez, Jr. and Pedro Luis Lopez. Sheriff's department investigators "learned that Pedro Luis Lopez and another male named Francisco Javier Alaniz had previously assaulted the decedent on November 10, 2015. (Case# 15-45334)."  The decedent's family members advised the Sheriff's investigators that Garces was seen at Mid-Valley on "November 6, 2016."  Sheriff's investigators "utilized alternative investigative tools which placed the decedent's phone in the area of the tire shop at approximately 3:27 p.m."  Investigators ran checks on "Gilberto Garces, Francisco Javier Alaniz, Pedro Luis Lopez and Ramiro Lopez Jr., all of whom have previous arrests for narcotics."  The officer affiant believed that "due to the nature and history of all parties possibly involved and the nature of said murder that narcotics and or U.S. Currency may be involved."

The magistrate issued the warrant based upon its supporting affidavit.[2]  *See* TEX. CODE CRIM. PROC. ANN. arts. 2.09, 2.10 (West, Westlaw 2017 through 1st C.S.).  The warrant was executed at Mid-Valley the same day.

### A. Probation Revocation

At the time of Garces's death, Lopez was on probation for his marijuana possession conviction.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(5) (West, Westlaw through 1st C.S. 2017).  A firearm was found in Lopez's office at Mid-Valley

---

[2] The Honorable Noe Gonzalez, district judge of the 370th District Court in Hidalgo County, issued the search warrant.

pursuant to the search warrant, and Lopez was arrested for the probation violation of felon in possession of a firearm. The State filed a motion to revoke, and the defense sought to suppress the firearm and any statements by Lopez after his arrest.

The trial court held a hearing on May 11, 2016, on the motion to revoke and considered the motion to suppress at that time. After the suppression hearing, the trial court found that the warrant was not supported by probable cause and dismissed the motion to revoke. The motion to suppress in the revocation case is not before us, however, the parties agreed that the trial court could use the record of proceedings from the revocation proceeding in the subsequent murder proceeding discussed next.

### B. Capital Murder Case

Lopez was later indicted for the intentional killing of Gilberto Garces by shooting him while in the course of committing or attempting to kidnap Garces. TEX. PENAL CODE ANN. § 19.03 (West, Westlaw through 1st C.S. 2017). In the capital murder case, defense counsel filed a motion to suppress the fruits of the search and any statements by Lopez. The motion argued that the affidavit in support of the search warrant described above did not support the magistrate's determination of probable cause. The trial court considered the motion to suppress on February 9, 2017, and again suppressed the evidence based upon a lack of probable cause. The trial court subsequently filed Findings of Fact and Conclusions of Law and Additional Findings of Fact. We discuss the most relevant of them below.

### II. MOTION TO SUPPRESS

The State's sole issue on appeal challenges the trial court's February 9, 2017,

4

ruling granting the motion to suppress on the ground that the trial court applied the wrong legal standard.

### A.    Standard of Review

"Appellate courts review a trial court's ruling on a motion to suppress by using a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing de novo the trial court's application of the law."  *State v. Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015).   Both appellate and trial courts are required to "give great deference to a magistrate's determination of probable cause."  *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)); *see also Cuevas v. State*, No. 13-11-00111-CR, 2012 WL 3134325 at *5 (Tex. App.—Corpus Christi Aug. 2, 2012, no pet.) (mem. op., not designated for publication).   Courts should interpret the search warrant affidavit in a common sense and realistic manner, drawing reasonable inferences from the information, and an appellate court should not invalidate a warrant by interpreting the affidavit in a hyper-technical manner.  *Le*, 463 S.W.3d at 877.   "Probable cause exists if, under the totality of the circumstances, there is fair probability that contraband or evidence of a crime will be found at a specified location."  *Id.*; *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007).   A reviewing court is generally limited to the four corners of the affidavit to determine probable cause.  *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013); *see also State v. Ozuna*, No. 13-16-00364-CR, 2018 WL 2057274 at *7 (Tex. App.—Corpus Christi May 3, 2018, no pet.) (mem. op., not designated for publication).

**B.     The Search Warrant**

Defense counsel challenged both probable cause and the breadth of the search warrant during the revocation proceedings.   During this motion to suppress hearing, Investigator Javier Vargas testified that the November 6, 2016 date in the affidavit was a typographical error and should have read April 6, 2016, the day of Garces's death and two days before the warrant affidavit was prepared.[3]   Investigator Vargas also testified that the investigators confirmed information from Garces's family that Garces had gone to Mid-Valley approximately four hours before his body was found.   In addition, investigators found a police report that reflected that persons named as suspects assaulted Garces in November 2015, six months' earlier.[4]   Garces and the named suspects had arrest records for illegal drugs.

Defense counsel argued that the unnamed family members were unknown and untested informants whose information was not shown to be reliable, that the November 6, 2016 date was impossible, and there was no reason to believe that Garces was killed at Mid-Valley.   The State argued that typographical errors do not invalidate a search warrant.   The State also argued that Garces's family members were more akin to citizen informers than unknown tipsters, the investigators confirmed much of the information from the family, Garces's last known location alive was at Mid-Valley, and Garces was assaulted by some of the named suspects six months earlier so that there was reason to

---

[3] Although a reviewing court is generally limited to the four corners of an affidavit, the State may offer testimony to correct technical discrepancies in the affidavit.   *Green v. State*, 799 S.W.2d 756, 759 (Tex. Crim. App. 1990); *Castalan v. State*, 54 S.W.3d 469, 477 (Tex. App.—Corpus Christi 2001, no pet.).

[4] The search warrant referenced the police case number but did not explicitly state that the number was to a police report.

6

believe that the evidence sought would be found at Mid-Valley.

The trial court orally ruled that the warrant was too general in the revocation proceeding. The trial court later issued twenty-seven conclusions of law and twenty-nine findings of fact some of which pertain exclusively to the motion to revoke, the rest relate to both the motion to revoke and the capital murder indictment. The trial court's findings of fact related to the murder case included the following:

> 26. The information provided to Affiant by "family members" was not reliable for the following reasons: a) did not provide the basis of their knowledge; b) Affiant did no independent investigation to corroborate the details provided; c) did not relate to Affiant any information to support their credibility including 1) length of residence in the community; 2) relationship to deceased; 3) good general character by lack of criminal record or arrest; 4) gainful employment history; 5) reputation for truth or veracity; or 6) names of the family members.

> 27. The magistrate was presented with anonymous/unnamed sources without any evidence of their reliability and credibility. (Related to CL 10 and 11)

> 28. The information that "alternate investigative tools" placed the deceased's phone in the area of the tire shop at approximately 3:27 p.m. does not contain a date for an independent assessment of probable cause. (Related to CL 4, 5, 6).

> 29. The "alternative investigative tools" are unknown and not shown to be reliable. (Related to CL 10 and 15)

The trial court's conclusions of law included the following:

> 6. The four corners of the search warrant affidavit did not provide a substantial basis for issuing the warrant. The test is whether a reasonable reading of the magistrate would lead to the conclusion that the four corners of the affidavit provide a "substantial basis" for issuing the warrant. *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006). (Related to FF25)

> 7. There was no fair probability that evidence of a crime would be found at the location authorized by the search warrant. Probable cause exists when under the totality of the circumstances, there is a "fair probability" that

7

contraband or evidence of a crime will be found at the specified location. *Duarte v. State*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012).[5] (Related to FF25)

8. Tips obtained from "anonymous or first-time confidential informants of unknown reliability must be coupled with facts from which an inference may be drawn that the informant is credible or that his information is reliable." *State v. Duarte,* 389 S.W.3d 349, 357 (Tex. Crim. App. 2012). (Related to FF25)

9. The requirement in CL 8 does not apply to information from citizens who freely share the information with police without withholding their names. *West v. State*, 720 S.W.2d 511, 513 n.2 (Tex. Crim. App. 1986) ("We decline the invitation to view with the same suspicion usually reserved for anonymous police informants with an unproven record of reliability information given by citizens who report a crime then freely share what information they have with police without withholding their own names."). However, here neither the family members nor the friends and their relationship to the victim were named for the magistrate to give the appropriate weight to their statements. Conclusory statements are insufficient. (Related to FF25)

11. The information from "family members" of unknown reliability was not coupled with facts from which an inference may be drawn that the they are credible or that their information is reliable. *State v. Coker*, 406 S.W.3d 392, 396 (Tex. App.—Dallas 2013, pet. ref'd). (Related to FF25)

12. Even if the information from alleged family members were treated as reliable, probable cause for the issuance of the search warrant is still lacking. The four corners of the affidavit do not provide a substantial basis for issuing the warrant. Under the totality of the circumstances, there was not a fair probability that contraband or evidence of a crime would be found at the tire shop. *State v. Duarte,* 389 S.W.3d 349, 384 (Tex. Crim. App. 2012)

13. The Search Warrant Affidavit concludes that, Garces was said to be going to the tire shop to get money from a friend and was later found dead. This was a search warrant for the last place Garces may have been to meet a friend before being found feet away from a vehicle in an open field in Mercedes, Texas. This is *insufficient* under the law and provides a general exploratory warrant. (*Andres[e]n v. Maryland*, 427 U.S. 463 (1976)

---

[5] Because this is a quotation from the trial court's conclusions of law, *Duarte v. State,* is cited as it was by the trial court. *See* 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). The trial court cited the case correctly in Finding of Fact 8.

## C. Analysis

The trial judge was clearly troubled by the officer's reliance on the unnamed family members, although he recognized that courts treat the reliability of information from citizen informers differently than first-time confidential informants.  In *State v. Coker*, cited by the trial court, a police officer received an anonymous letter from a citizen that Coker was manufacturing methamphetamine at his residence.  406 S.W.3d 392, 394 (Tex. App.—Dallas 2013, pet ref'd).  The anonymous citizen's complaint was based on his conversations with others who had seen the lab and who associated with the defendant.  *Id.*  The officer corroborated that the defendant lived at the reported address.  The officer also collected the defendant's trash which included empty containers of chemicals used to manufacture methamphetamine and determined there was methamphetamine residue in the trash by laboratory testing.  *Id.* at 395.  The officer then obtained a search warrant for the premises which confirmed that Coker was manufacturing methamphetamine.  *Id.* at 395.  The trial court granted a defense motion to suppress after finding that there was no probable cause.  *Id.*  Coker argued that the unknown citizen's complaint was insufficient even when combined with the trash search to qualify as probable cause.  *Id.*  The Dallas Court held that the magistrate was entitled to rely on information provided by the anonymous private citizen which provided a direct link between the trash search and the defendant.  *Id.* at 396.  *Illinois v. Gates* further established that an anonymous citizen complaint, if corroborated in part, may form a legitimate basis for issuance of a search warrant.  462 U.S. 213, 243–45 (1983); *see also* *Le*, 463 S.W.3d at 876 (holding that the court of appeals properly considered the

anonymous citizen information supporting the affidavit.).

In *State v. Duarte*, the court further recognized that "[c]itizen informants are considered inherently reliable; confidential informants are not." 389 S.W.3d 349, 357 (Tex. Crim. App. 2012).[6] In *Duarte*, the issue was the reliability of a first-time criminal informant whose hearsay information was not corroborated by police investigation. *Id*. The trial court in *Duarte* granted the motion to suppress which decision was affirmed by the Court of Criminal Appeals. *Id*. at 353, 360.

The trial court disregarded the affidavit's statement that Garces was seen at Mid-Valley the afternoon of his death based upon the typographical error in the affidavit that stated he was seen there on November 6, 2016, a date that had not yet occurred. *See* Finding of Fact 25(e) in which the trial court notes that the date was seven months after Garces died. The error was explained during the suppression hearing. Typographical errors that are explained at a suppression hearing do not invalidate a search warrant. *See Green v. State*, 799 S.W.2d 756, 761 (Tex. Crim. App. 1990); *Lyons v. State*, 503 S.W.2d 254, 255 (Tex. Crim. App. 1973).[7]

The trial court also rejected the information provided by the unnamed family members because the affidavit did not provide the basis of their knowledge and there

---

[6] As long ago as 1939, Texas courts recognized the inherent reliability of citizen informants. *See Hall v. State*, 136 Tex. Crim. 320, 321, 125 S.W.2d 293, 295 (1939). The search warrant in that case was supported by an affidavit issued based upon the reports of unnamed citizens. *Id*.; *see also Wybie v. State*, 140 Tex. Crim. 123, 125, 147 S.W.2d 243, 244 (1940) (same).

[7] *Champion v. State*, 919 S.W.2d 816, 818 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) ("Technical discrepancies in dates or times do not automatically invalidate a search warrant."); *Schornick v. State*, 02-10-00183-CR, 2010 WL 4570047 at *3 (Tex. App.—Fort Worth Nov. 4, 2010, no pet.) (mem. op., not designated for publication); *see also Olivarri v. State*, 838 S.W.2d 902, 905 (Tex. App.—Corpus Christi 1992, no pet.).

were no details given about the family members such as their: 1) length of residence in the community; 2) relationship to the deceased; 3) good general character by lack of criminal record or arrest; 4) gainful employment history; 5) reputation for truth and veracity; or 6) names of the family members."   The trial court's finding of fact 26 set out that there was no investigation that corroborated any of the information from the family members.

The trial court further found that the "alternate investigative tools" that placed Garces's phone in the area of the tire shop at 3:27 p.m. did "not contain a date for independent assessment of probable cause" and the "'alternate investigative tools' are unknown and not shown to be reliable."   However, a magistrate judge could readily have inferred that investigators obtained the Garces's cell phone data sometime between 7:30 p.m. on April 6, 2016, when his body was found, and the afternoon of April 8, 2016, the date on which the search warrant application was prepared.[8]   Requiring the date of investigation be shown under these circumstances is the sort of hyper-technical reading that is prohibited.   *See State v. McClain*, 337 S.W.3d 268, 273 (Tex. Crim. App. 2011) ("The court of appeals violated the prohibition on 'hypertechnical' review of a warrant affidavit when it strictly applied rules of grammar and syntax in its analysis.   Further, the court of appeals reviewed the affidavit by focusing on what the officer 'implied' rather than on what the magistrate could have reasonably inferred.")

Moreover, the trial court's criticism that the affidavit failed to spell out the investigative tools used and prove them to be reliable to obtain a search warrant is not

---

[8]  The affidavit's jurat shows that it was signed on April 8, 2016, at 1:50 p.m.,

the "common-sense" reading of the affidavit required. *See Gates*, 462 U.S. at 235–36; *State v. Bradley*, 966 S.W.2d 871, 873 (Tex. App.—Austin 1998, not pet.) ("Judicial review of the decision to issue a search warrant must take into account that many warrants are issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than that used in formal legal proceedings."). In *Blake*, the trial court found the affidavit did not support probable cause, but after applying the required deference and common-sense approach to the totality of the circumstances, the court of appeals reversed and remanded. *Id.* at 873, 876.

In summary, the magistrate judge had before him the following facts as outlined in the affidavit: unnamed citizen family members, who were identified to the police officer, although not in the affidavit, who provided information regarding Garces's intent to visit Mid-Valley on the afternoon of his death, one of them reported that he/she last spoke to Garces at 3:13 p.m., and later calls to him went unanswered. Garces was seen at Mid-Valley the afternoon of his death. Police investigation confirmed the location of Garces's cell phone "in the area" of Mid-Valley at 3:27 p.m. and confirmed a relationship between the owner of the tire shop and his associates (named in the warrant) with Garces through a previous altercation. The officer further determined that Garces and the suspected persons were all previously arrested for narcotics violations. Garces was found dead four hours after he was at the tire shop.

Although the trial court noted that more information could have been included in the warrant, "[t]he focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit."

12

*Duarte*, 389 S.W.3d at 354–55.

Considering the totality of the circumstances and the extreme deference required to the magistrate judge's finding of probable cause, *see Le*, 463 S.W.3d at 876, the magistrate had a substantial basis to believe that evidence related to Garces's murder would be found at the tire shop. The trial court abused its discretion by not applying the deferential standard required to the magistrate's finding of probable cause. We sustain the State's sole issue on appeal.

### III. CONCLUSION

We reverse the order of the trial court suppressing evidence and remand for proceedings consistent with this opinion.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
9th day of August, 2018.