

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00715-CR

Bradlee Wayne **WRINKLE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 6023
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
    Marialyn Barnard, Justice
    Patricia O. Alvarez, Justice

Delivered and Filed: December 27, 2018

AFFIRMED

Appellant Bradlee Wayne Wrinkle appeals his conviction for a third-degree drug felony. Wrinkle argues the evidence in the Affidavit of Search Warrant was insufficient for the magistrate to find probable cause to search his property, and the evidence discovered from the search should have been suppressed. Because the magistrate had a substantial basis for concluding that probable cause existed, the trial court did not err in denying the motion to suppress.

We affirm the trial court's judgment.

## BACKGROUND

Deputy Sheriff Lucas Flores, an investigator with the Special Crimes Unit of the Kerr County Sheriff's Office, submitted an Affidavit of Search Warrant to the magistrate and sought a search warrant. The magistrate issued the warrant, and the warrant was executed early the next morning. In the search, law enforcement officers found chemical precursors to methamphetamine and several items of drug paraphernalia. Wrinkle was charged with possession or transport of certain chemicals with intent to manufacture a controlled substance; he was indicted and arrested.

At a pretrial hearing on Wrinkle's motion to suppress evidence, the trial court conducted an evidentiary hearing. Deputy Flores, Wrinkle, and Wrinkle's father testified, and the attorneys presented arguments. The trial court denied the motion to suppress, and Wrinkle pled true and stipulated that he committed the charged offense. Wrinkle was convicted of the third-degree felony and sentenced to confinement for two years in the Texas Department of Criminal Justice—Institutional Division and assessed attorney's fees, court costs, and restitution totaling $1,275.

In his sole issue on appeal, Wrinkle argues the trial court erred by denying his motion to suppress because the Affidavit of Search Warrant did not provide sufficient evidence for the magistrate to find probable cause to search his property for methamphetamine and its precursors.

We begin with a brief review of the applicable law.

## APPLICABLE LAW

"To issue a search warrant, the magistrate must first find probable cause that a particular item will be found in a particular location." *Moreno v. State*, 415 S.W.3d 284, 287 (Tex. Crim. App. 2013); *accord State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011). As the magistrate seeks to determine whether there is "probable cause to support the issuance of a search warrant, . . . [the magistrate] is constrained to the four corners of the affidavit." *McLain*, 337 S.W.3d at 271; *accord State v. Jordan*, 342 S.W.3d 565, 569 (Tex. Crim. App. 2011). We

recognize that "[t]his process requires that the magistrate . . . 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Moreno*, 415 S.W.3d at 287 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *accord McLain*, 337 S.W.3d at 272.

In reviewing the magistrate's decision, "we apply a highly deferential standard to the magistrate's determination because of the constitutional preference that searches be conducted pursuant to a warrant." *Moreno*, 415 S.W.3d at 287; *accord Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). We review the decision using a bifurcated standard of review: we give almost total deference to the court's determination of historical facts that depend on credibility, but we review the court's application of the law de novo. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).

"We are instructed not to analyze the affidavit in a hyper-technical manner." *McLain*, 337 S.W.3d at 271; *accord State v. Cuong Phu Le*, 463 S.W.3d 872, 877 (Tex. Crim. App. 2015). Instead, we "interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences . . . [and] we defer to all reasonable inferences that the magistrate could have made." *McLain*, 337 S.W.3d at 271; *see Rodriguez*, 232 S.W.3d at 61.

"Probable cause for a search warrant exists if, under the totality of the circumstances presented to the magistrate, there is at least a 'fair probability' or 'substantial chance' that contraband or evidence of a crime will be found at the specified location." *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010); *accord McLain*, 337 S.W.3d at 272.

"[We] must uphold the magistrate's decision so long as the magistrate had a substantial basis for concluding that probable cause existed." *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012); *accord McLain*, 337 S.W.3d at 271.

## ARGUMENTS

### A.     Wrinkle's Arguments

Wrinkle argues the evidence in the Affidavit of Search Warrant was insufficient for the magistrate to find probable cause to search his property.

He contends the confidential informant's and Deputy Flores's statements were conclusory, not supported by corroborating details, and did not link Wrinkle to the property. Wrinkle states that "[n]owhere in the affidavit does Flores state that he or the CI had personal knowledge that the person calling [from] that number was [Wrinkle]" and that "nothing in the affidavit links [Wrinkle] to the phone call except for the statement by Flores that [the CI] received a telephone call from [Wrinkle]." He adds that "there is no evidence in the affidavit that 5660 U.S. Highway 87 South, Fredericksburg, Gillespie County, Texas is the location where [Wrinkle] resides or is cooking methamphetamine." Finally, Wrinkle insists that "[n]othing in the affidavit supports a finding of probable cause that methamphetamine was being cooked at the property."

### B.     State's Arguments

The State argues that the totality of the circumstances presented in the affidavit supports a finding of probable cause. The State notes that if a confidential informant has previously provided information that has proven to be true and correct, information provided by the informant may be considered credible. According to the State, the confidential informant and Deputy Flores both stated the person calling was Wrinkle, Wrinkle's statements showed a familiarity with local stores on where to find ingredients to manufacture methamphetamine, familiarity with the precursors to manufacture methamphetamine, and a statement that Wrinkle was going to go home and make a

batch of methamphetamine. In the State's view, there was probable cause based on the statements in the affidavit.

### DISCUSSION

We begin by reviewing the contents of the affidavit.

### A.      Affidavit

Paragraph 1 describes the property to be searched. It states the property's address and describes the property in considerable detail. It states there is a "brown travel trailer known to the Affiant as a 'goose neck' parked behind the main residence with unknown occupants. There is also alleged to be a pop-up style camper on the property where [Wrinkle] sleeps."

Paragraph 2 states Wrinkle has control of the property,

Paragraph 3 identifies the personal property to be searched for including "Methamphetamine and Methamphetamine precursors [including] red phosphorus, iodine, or iodine crystals."

Paragraph 4 offers facts intended to support a finding of probable cause to issue the warrant; it reads in its entirety as follows:

> Within the last 24 hours, all of the following occurred: a credible and reliable informant, who has proved to be credible and reliable because said informant has given credible and reliable information in the past about narcotics violations to law enforcement which has proved to be true and correct (hereinafter referred to as "informant"), arranged to purchase a half ounce of methamphetamine from Bradle[e] Wrinkle. The informant advised that Wrinkle was distributing large quantities of methamphetamine in the Kerrville/Fredericksburg area. Under my direction and with the assistance of the Kerrville Police Department, we attempted to purchase the methamphetamine from Wrinkle but the source of supply never showed up. The informant received a telephone call from Wrinkle and they began to discuss the manufacture of methamphetamine. The call was only partially recorded due to the fact that the call was not expected, however, I was present for the first part of the conversation and the informant had placed the call on speaker phone. During this phone call, I heard Wrinkle advise that he would be getting off work soon and that he was going to go home and make a batch of methamphetamine. Wrinkle advised that he had all the ingredients to make it except for the tincture of iodine and red phosphorus. Wrinkle asked the informant to bring

him some tincture of iodine and matchbooks. The informant asked if Wrinkle just needed any kind of iodine and he said, "no, it needs to be tincture of iodine" he further explained that it was for sale at Walgreens, CVS and Gibsons. Wrinkle also asked the informant to bring about 3 boxes of the book type matches. Wrinkle stated that he can make 3 grams of methamphetamine from four bottles of Iodine and he stated "I got the pills at the house". Wrinkle told the informant that the meth that he makes is more expensive because it's fresh and good quality. The informant asked if matches were available at the same store with the iodine and he advised the informant not to buy both at the same store and he also said they might make the informant sign for the iodine. Wrinkle said under no circumstances is the informant to sign for the iodine. He advised the informant to go to Wal-Mart and get "iodid". He stated that it was decolorized tincture of iodine.

It should be noted that Wrinkle is currently on parole for Delivery of a Controlled Substance in Penalty Group 1 in the amount of 400 grams or more and for Possession of Certain Chemical with Intent to Manufacture a controlled Substance in PG1/1A.

Based on my training and experience, I am aware that people who manufacture methamphetamine often have at least some finished product (methamphetamine) in their home or stored in outbuildings or other enclosed structures on their property, such as vehicles, travel trailers, campers, and storage sheds. Therefore, Affiant seeks permission to search said locations as well as the residence itself.

**B.     Conclusory Statements**

Wrinkle contends the affidavit cannot support a finding of probable cause because several statements in the affidavit are merely conclusory. The conclusory statements, according to Wrinkle, include the affidavit's identification of Wrinkle as the caller, the confidential informant's statement that Wrinkle was selling drugs, and any connection to, or illegal activity at, the property searched.

Wrinkle cites *Burnett* for support, but it is readily distinguishable. In *Burnett*, the court concluded "[t]here are no facts in the affidavit which connect appellant with the offense beyond mere suspicion." *Burnett v. State*, 754 S.W.2d 437, 443 (Tex. App.—San Antonio 1988, pet. ref'd). But here, Deputy Flores did not merely say that "he has cause to suspect and does believe that" a search would reveal methamphetamine or its precursors at the property. *See, e.g., Illinois v. Gates*, 462 U.S. 213, 239 (1983) (quoting *Nathanson v. United States*, 290 U.S. 41, 44 (1933)).

Instead, Deputy Flores provided facts, including information from the confidential informant and from a recorded phone call to the confidential informant, that identify Wrinkle as the caller and tie him to the searched property.

We begin with the caller's identity.

## C.    Identity of Caller

The confidential informant stated Wrinkle was the caller and there was a substantial basis for the magistrate to find the statement credible because the confidential informant had "given credible and reliable information in the past about narcotics violations to law enforcement which has proved to be true and correct." *See Duarte*, 389 S.W.3d at 358 ("[The affiant's] declaration that the informant's past information has led to convictions is a sufficient showing of the informer's credibility."); *Hegdal v. State*, 488 S.W.2d 782, 785 (Tex. Crim. App. 1972) (same).

The confidential informant's track record of providing true and correct information was a substantial basis to credit the confidential informant's hearsay. *See Hennessy v. State*, 660 S.W.2d 87, 91 (Tex. Crim. App. [Panel Op.] 1983) ("Hearsay-upon-hearsay may be utilized to show probable cause as long as the underlying circumstances indicate that there is a substantial basis for crediting the hearsay at each level."); *Gonzales v. State*, 481 S.W.3d 300, 312 (Tex. App.—San Antonio 2015, no pet.) (crediting hearsay within hearsay where there was a substantial basis for each level).

Further, the caller's statements showed an intimate knowledge of the ingredients to manufacture methamphetamine, and Wrinkle had been convicted of possession of methamphetamine precursors with an intent to manufacture it. The caller's statements also showed the caller knew where to find methamphetamine ingredients in the local area, and the confidential informant said that Wrinkle lived at the property in the local area. The caller asked the confidential

informant to purchase chemical precursors, from which the magistrate could reasonably infer that Wrinkle knew the confidential informant, the confidential informant knew Wrinkle, and the confidential informant could recognize Wrinkle's voice.

Moreover, Deputy Flores identified the caller as Wrinkle, and Deputy Flores's information is presumed to be reliable. *See Pair v. State*, 184 S.W.3d 329, 337 (Tex. App.—Fort Worth 2006, no pet.); *see also Marquez v. State*, 725 S.W.2d 217, 233 (Tex. Crim. App. 1987) ("[A]s a matter of constitutional law . . . a police officer is presumed to be reliable and no special showings are required."), *overruled on other grounds by Moody v. State*, 827 S.W.2d 875, 892 (Tex. Crim. App. 1992). Thus, the magistrate had a substantial basis to credit Deputy Flores's hearsay. S*ee Hennessy*, 660 S.W.2d at 91; *Gonzales*, 481 S.W.3d at 312.

The magistrate could have reasonably concluded that Wrinkle was the caller. *See McLain*, 337 S.W.3d at 271; *Rodriguez*, 232 S.W.3d at 61.

**D.    Connection to Property**

Wrinkle also complains that the affidavit's statements about the property and any connection to methamphetamine or manufacturing methamphetamine were conclusory. The affidavit states the property's address, states Wrinkle has control of the property, describes the property in considerable detail, and states that Wrinkle sleeps on the property.

During Wrinkle's call, he asked the confidential informant to purchase the remaining chemicals he needed to manufacture the methamphetamine, and he added he would be leaving work to go home to make a batch of methamphetamine. The magistrate could have reasonably inferred that because the affidavit stated that Wrinkle slept at the property, the property at the address given in the affidavit was Wrinkle's "home," and Wrinkle was headed to the property to manufacture methamphetamine.

**E.     Affidavit Supports Probable Cause**

Contrary to Wrinkle's arguments, the affidavit includes facts that support the confidential informant's and Deputy Flores's statements.   Wrinkle had been previously convicted for possession of certain chemicals with intent to manufacture a controlled substance—the very crime for which the search warrant was requested to investigate—and the affidavit avers that Wrinkle called the confidential informant and discussed the remaining chemicals Wrinkle needed to manufacture some methamphetamine.

Considering the totality of the circumstances—including the confidential informant's and Deputy Flores's identifications of Wrinkle as the caller, the information in the call, and Wrinkle's previous convictions—and recognizing that the magistrate could draw reasonable inferences from the facts, *see McLain*, 337 S.W.3d at 271; *see Rodriguez*, 232 S.W.3d at 61, we conclude there was a substantial chance that methamphetamine or its identified precursors would be found at the property identified in the affidavit.  *See McLain*, 337 S.W.3d at 272; *Flores*, 319 S.W.3d at 702.

Because there was a substantial basis for the magistrate to conclude that probable cause existed, we will sustain the magistrate's decision.  *See Duarte*, 389 S.W.3d at 354; *McLain*, 337 S.W.3d at 271.

CONCLUSION

We conclude that the magistrate had a substantial basis for determining that there was a fair probability that methamphetamine or methamphetamine precursors would be found at the property identified in the affidavit as Wrinkle's residence, and the affidavit supported probable cause.  Thus, the trial court did not err in denying Wrinkle's motion to suppress the evidence.  We overrule Wrinkle's sole issue and affirm the trial court's judgment.

Patricia O. Alvarez, Justice

DO NOT PUBLISH