

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOEL MORENO, | § | No. 08-16-00003-CR |
| Appellant, | § | Appeal from the |
| v. | § | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20090D03245) |
| | § | |

## **O P I N I O N**

This case presents the interplay of the fruit-of-the-poisonous-tree doctrine and the good-faith exception to the exclusionary rule. Appellant Joel Moreno pleaded guilty to possession with intent to deliver a controlled substance in penalty group one, with an aggregate weight of two hundred grams or more, but less than four hundred grams.[1] Moreno appeals the trial court's order denying his motion to suppress evidence that was seized from his home following a search based on a warrant. Moreno argues that officers lacked sufficient probable cause to obtain the warrant given that the affidavit submitted in its support included an alert from a drug-detection dog tainted by illegality. Based on the controlling precedent of *McClintock v. State*, 541 S.W.3d 63, 74 (Tex.

---

[1] *See* TEX. HEALTH AND SAFETY CODE ANN. § 481.115(e).

Crim. App. 2017), we affirm.

## BACKGROUND

On June 29, 2009, Detective Ben Perales of the El Paso County Sheriff's Department submitted a request for a warrant to search a residence by providing the following pertinent information in affidavit form:

> On or about June 29, 2009 information was received from an anomymous [sic] source that the suspected party was reporteldy [sic] involved in storing cocaine at the suspected place. The Affiant and members of the El Paso County Sheriff's Office . . . attempted [to] obtain consent to search the residence. The Affiant along with Sheriff's K-9 Deputy George Johnson and his canine partner Ciro knocked on the front door and were greeted by the [Moreno] . . . . [Moreno] did not give consent to the AFFIANT, but [c]anine Ciro gave a positive alert to the odor of narcotics. K-9 Ciro is certified . . . to sniff the odor of cocaine. . . .

After the magistrate signed the warrant, officers executing the warrant found a duffle bag that contained "several bricks or bundles" of a white powdery substance which field tested positive for cocaine.

By indictment, the State charged Moreno with possession with intent to deliver cocaine with an aggregate weight of four hundred grams or more in violation of TEX. HEALTH AND SAFETY CODE ANN. § 481.112(f). Thereafter, Moreno filed a pretrial motion to suppress all evidence obtained by law enforcement during the described search, contending it was conducted without probable cause, without consent, and without a search warrant supported by probable cause. While his motion remained pending, Moreno sought and received several continuances from the trial court.

In the interim, on March 26, 2013, the United States Supreme Court handed down the case of *Florida v. Jardines*, 569 U.S. 1, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013). In *Jardines*, officers acting without a warrant took a narcotics-detection dog to sniff at the base of the front door of a home after receiving an unverified tip of marijuana being grown inside. *Id*. at 3–4. After the dog

positively alerted to odor, the officers then relied on that alert and the earlier tip to obtain a warrant to return to the home and conduct a search. *Id.* at 4. *Jardines* asked, "whether using a drug-sniffing dog on a homeowner's porch to investigate the contents of the home [qualified as] a 'search' within the meaning of the Fourth Amendment." *Id.* at 3. Based on a physical intrusion of a protected area, *Jardines* found that "[t]he government's use of trained police dogs to investigate [a] home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." *Id.* at 11–12. Relying on *Jardines*, Moreno amended his motion asserting the following arguments: (1) that officers trespassed on his property by bringing a narcotics-detection dog to his front door in violation of his Fourth Amendment rights; (2) that the affidavit submitted in support of the later issued search warrant—relying in part on the dog alert—contained information illegally obtained; and (3) without the dog alert, the affidavit had insufficient information remaining to support a valid warrant to search his home.

At the hearing on Moreno's motion, the State presented testimony from Detective Perales and Officer Johnson about the events of June 29, 2009. Detective Perales testified that on the date in question he and other officers including Officer Johnson conducted a knock-and-talk around 5 p.m. at Moreno's home after receiving information alleging that narcotics were being stored inside. As a canine officer, Johnson was accompanied by Ciro,[2] a dog trained to alert to the presence of narcotic odors. Detective Perales and Officer Johnson both testified that they had understood on that date, based on their training and common practices of their department and other local law enforcement agencies, that they could lawfully use a drug-detection dog during a knock-and-talk at a residence without needing to first obtain a search warrant.

---

[2] In the search warrant affidavit, the dog's name is given as "Ciro," but the reporter's transcript provides the name as "Silo" with a notation that a phonetic spelling was used. For our purpose, we will use the name Ciro for the name of Officer Johnson's drug-detection dog.

On arrival, the group walked to the front door of Moreno's house and Detective Perales rang the doorbell. Moreno answered and stood in the partially opened doorway while Detective Perales identified himself and asked whether Moreno would give them permission to conduct a search of his residence. In response, Moreno said "No." Detective Perales then turned to Deputy Johnson and asked whether he observed an alert from Ciro. Officer Johnson confirmed his observation of Ciro providing an alert to odor once Moreno had opened the front door. Officer Johnson further described that Ciro alerted by lunging on leash, tried to go around Moreno, sat down, then tried a second time to enter the house. While lunging, Ciro's nose briefly "broke the plain [sic]," or passed over the threshold of the doorway, but the dog did not enter as Johnson pulled him back. Detective Perales informed Moreno of Ciro's alert and asked him whether anyone else was then present in the home. After Moreno responded that nobody was there, officers conducted a protective sweep, which they completed without incident and without Ciro. Detective Perales then left the scene to obtain a search warrant. After the magistrate signed the warrant, Detective Perales called officers on scene and advised them to proceed with a search. In a closet, the officers found a bag containing bundles of cocaine.

As the hearing concluded, the State sought and received permission to later submit a brief in opposition of Moreno's motion. The State argued in its response that no Fourth Amendment violation had occurred as the officers had testified they believed it was permissible, in June 2009, for them to conduct a canine sniff on a residence without a warrant based on their training and experience; or, in the alternative, if a violation had occurred, officers had nonetheless relied in good faith on pre-*Jardines* precedents, and the later-issued search warrant from a magistrate, to conduct their search of Moreno's residence. The trial court later denied Moreno's motion to suppress without issuing findings of fact or conclusions of law. After preserving his right to appeal

the court's ruling, Moreno then pleaded guilty to a reduced charge and received twelve years' incarceration as his punishment. Moreno then timely filed this appeal.

## Standard of Review

We review the trial court's ruling on a motion to suppress under a bifurcated standard, giving almost total deference to the court's determination of historical facts and analyzing *de novo* its application of the law. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). If, as is the case here, a trial court does not enter findings of fact or conclusions of law related to its ruling, we construe the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35–36 (Tex. Crim. App. 2017) (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)).

A search warrant cannot be issued unless it is based on probable cause as determined from the four corners of a sworn affidavit. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; TEX. CODE CRIM.PROC.ANN. art. 18.01(b) ("No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance."). Ordinarily, we give "great deference" to a magistrate's determination of probable cause in issuing a warrant. *State v. Cuong Phu Le*, 463 S.W.3d 872, 876-78 (Tex. Crim. App. 2015) (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) and *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). That deference does not apply, however, when parts of an affidavit must be stricken due to an illegality. *McClintock v. State*, 444 S.W.3d 15, 19 (Tex. Crim. App. 2014). "When part of a warrant affidavit must be excluded from the calculus . . . then it is up to the reviewing courts to determine whether 'the independently acquired and lawful information stated in the affidavit nevertheless clearly established probable cause.'" *Id*. at 19. When a search warrant is issued based on illegally-

obtained information, we must determine whether the remaining, legally-obtained information clearly establishes probable cause. *Cuong Phu Le*, 463 S.W.3d at 877.

In other words, we must determine, from the untainted information in the affidavit, whether there is a fair probability that contraband or evidence of a crime will be found at a specified location at the time the warrant is issued under the totality of the circumstances. *Id.* at 877–78. We are constrained to the four corners of the affidavit and by our obligation to interpret the affidavit, not in a hyper-technical manner, but in a commonsensical and realistic manner from which reasonable inferences can be drawn. *Id*. at 877; *see also State v. McLain,* 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). Probable cause exists if, under the totality of the circumstances, there is fair probability that contraband or evidence of a crime will be found at a specified location. *Cuong Phu Le,* 463 S.W.3d at 878.

## DISCUSSION

In one issue, Moreno contends the trial court erred in denying his motion to suppress, arguing that the officers, who acted solely on an anonymous tip, violated his Fourth Amendment rights in bringing a narcotics-detection dog to sniff at the front door of his home without first obtaining a search warrant. Moreno contends (1) the positive alert was tainted by its illegality under *Jardines*, and consequently, could not be relied upon to support probable cause for issuance of a warrant; and (2) the anonymous tip, standing alone without the canine search, could not itself sustain the search warrant. Citing article 38.23(a) of the Texas Code of Criminal Procedure, Moreno asserts the statutory exclusionary rule requires suppression of all evidence unlawfully obtained from the search of his home.

In response, the State not only opposes Moreno's constitutional claim, but also advances several arguments in the alternative against exclusion of the seized evidence, including that Texas'

version of the federal "good-faith exception" to the exclusionary rule laid out in TEX. CODE CRIM. PROC. ANN. art. 38.23(b) applied to the officers' reliance on a warrant issued by a neutral magistrate.

### The Dog Sniff and the Fourth Amendment

Moreno first asserts that a dog sniff at the curtilage of a home is a search under the Fourth Amendment that itself requires a warrant. In opposition, the State argues that because officers were acting under an objectively reasonable mistake of law, they did not violate the Fourth Amendment in conducting a warrantless dog sniff at the front door of Moreno's home. As a threshold question, we first consider whether the officers engaged in an unlawful search by bringing a narcotics detection dog to the door of Moreno's home without a search warrant.

The Fourth Amendment expressly protects "persons, houses, papers, and effects," against unreasonable searches and seizures without a warrant based on probable cause. U.S. CONST. amend. IV. As stated earlier, in *Jardines*, the Supreme Court held that police use of a narcotics-sniffing dog on the front porch of a home, without a search warrant supported by probable cause, violated the Fourth Amendment's prohibition against warrantless searches. *Jardines*, 569 U.S. at 11-12; *see also State v. Rendon*, 477 S.W.3d 805, 810-11 (Tex. Crim. App. 2015) (holding that a warrantless drug sniff at the front-door threshold of an apartment constitutes an unlawful invasion of the curtilage of the home in violation of the Fourth Amendment). The text of the Amendment "indicates with some precision the places and things encompassed by its protections[.]" *Jardines,* 569 U.S. at 6 (quoting *Oliver v. United States,* 466 U.S. 170, 176, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)). Among areas protected, "the home is first among equals[,]" and its protection extends to "the area 'immediately surrounding and associated with [it],'" otherwise known as "the curtilage." *Id.* at 6 (citing *Oliver,* 466 U.S. at 180). This area is "intimately linked to the home, both physically and psychologically," and is long recognized as an area outside the home where "privacy

expectations are most heightened." *Id.* at 7 (citing *California v. Ciraolo,* 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986)).

Police officers not armed with a warrant may approach and knock on a door as is customarily permitted of ordinary citizens. *Id*. at 8 (citing *Kentucky v. King,* 563 U.S. 452, 469-70, 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011)). However, *Jardines* clarified that "introducing a trained police dog to explore the area around the home in hopes of discovering incriminating evidence is something else [altogether]." *Id*. at 8–9. "There is no customary invitation to do *that*." *Id*. The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990). Fourth Amendment rights are implicated where officers' behavior "objectively reveals a purpose to conduct a search[.]" *Jardines*, 569 U.S. at 10.

We conclude here that by bringing Ciro with them to the front door of Moreno's home, Officers Perales and Johnson exceeded acceptable boundaries and conducted a warrantless search of a protected area. *See Jardines*, 569 U.S. at 11-12; *see also Rendon*, 477 S.W.3d at 806. Regardless of the officers' understanding, their behavior objectively revealed they purposefully approached the door of the home with a drug-detection canine to observe whether the canine would alert to a scent of narcotic odor. Describing his role on the occasion, Officer Johnson testified he assisted other officers "to go ahead and run a canine sniff of the residence." Officer Perales acknowledged that when Moreno was asked whether he would consent to a search, he responded he would not. The record establishes the officers' behavior objectively revealed a purpose to conduct a search in a constitutionally protected area without a warrant and without consent. *See Jardines*, 569 U.S. at 11-12; *Rendon*, 477 S.W.3d at 810-11.

To the extent that *Jardines* clarified the implication of constitutional rights, the State does

not dispute that its holding applies retroactively to all cases pending on direct appeal. *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Nonetheless, the State argues that because the officers were acting under an objectively reasonable mistake of law when they conducted their canine-search, their conduct was reasonable and did not in fact violate the Fourth Amendment. Prior to *Jardines*, the State asserts that Texas courts had held that police-use of a drug-detection dog outside a home was not a Fourth Amendment search requiring a warrant citing the following cases for that proposition. *See e.g.*, *Romo v. State*, 315 S.W.3d 565, 572-73 (Tex. App.—Fort Worth 2010, pet. ref'd) (held that drug-detection dog's sniffs of garage door and backyard fence were not searches because the areas were not protected from observation by passersby); *Rodriguez v. State*, 106 S.W.3d 224, 228-30 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd), *cert. denied*, 540 U.S. 1189 (2004) (held that defendant had no reasonable expectation of privacy at the front door area of his home as it was not enclosed and remained unprotected from observation by passersby); *Porter v. State*, 93 S.W.3d 342, 346-47 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (held that dog sniff outside front door not violative of constitutional protections unless a reasonable expectation of privacy exists in the object of the challenged search).[3]

The State argues that Fourth Amendment questions are governed by the concept of "reasonableness," and no violation occurs where officers act under an objectively reasonable mistake of fact. For this proposition, the State relies on *Heien v. North Carolina*, --- U.S. ---, 135 S.Ct. 530, 536-40, 190 L.Ed.2d 475 (2014), a case holding that an officer's objectively reasonable mistake about a traffic law would not vitiate the officer's reasonable suspicion to initiate a traffic

---

[3] For the most part, these cases were decided not on a theory of physical intrusion of protected property but on the absence of a reasonable expectation of privacy in possessing illegal drugs. *See e.g.*, *Rodriguez*, 106 S.W.3d at 229 and *Porter*, 93 S.W.3d at 346 (citing *United States v. Jacobsen*, 466 U.S. 109, 123, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)).

stop.  *Heien* concluded that the officer's legal error did not give rise to a Fourth Amendment violation.  *Id*. at 539.  But *Heien* also stated that "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable."  *Id*.  Moreover, *Heien* reiterated that courts "do not examine the subjective understanding of the particular officer involved."  *Id.*

Here, given the heightened protection afforded the curtilage of a residence, we conclude that *Heien* is distinguishable with regard to whether the officers violated Moreno's Fourth Amendment rights.  As stated by *Jardines*, "[o]ne virtue of the Fourth Amendment's property-rights baseline is that it keeps easy cases easy."  *Jardines*, 569 U.S. at 11.  Protection of the curtilage "has ancient and durable roots."  *Id*. at 6.  Moreover, under this property-based principle, it is additionally not necessary to examine whether the officers' investigation violated privacy expectations in the property searched.  *Id*. at 10.  When the Government obtains information by physically intruding on persons, houses, papers, or effects, "a 'search' within the original meaning of the Fourth Amendment" has "undoubtedly occurred."  *Id*. at 5.  Accordingly, we conclude there is no question at this juncture that the drug sniff occurring at the front door of Moreno's home was perpetrated through an unconstitutional invasion of the protected curtilage.  *See Jardines*, 569 U.S. at 11-12; *Rendon*, 477 S.W.3d at 811.

### The Exclusionary Rule and *McClintock v. State*

In a two-part argument about the exclusion of evidence, Moreno argues first that the alert from Ciro could not support probable cause for the warrant because it was illegally obtained under the holding of *Jardines*.  Second, he claims that the anonymous tip alone could not itself sustain the warrant.  Thus, citing article 38.23(a) of the Texas Code of Criminal Procedure, Moreno argues that the statutory exclusionary rule requires suppression of all evidence obtained from an unlawful search of his home.  In opposition, the State argues that even with a Fourth Amendment violation,

the evidence seized from Moreno's residence was not otherwise subject to exclusion given that the officers relied in good faith on pre-*Jardines* precedents when they brought a drug-detection dog to Moreno's door to conduct their search.

The exclusionary remedy in Texas is set forth in article 38.23 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.23. With one specified exception, the statutory remedy provides as follows:

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> . . .
>
> (b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) and (b).

Simply stated, article 38.23(a) requires the exclusion of evidence obtained in violation of the law. *State v. Daugherty*, 931 S.W.2d 268, 272-73 (Tex. Crim. App. 1996); TEX. CODE CRIM. PROC. ANN. art. 38.23(a). The statutory remedy, however, does not apply where evidence is obtained by an officer "acting in objective good faith reliance upon a warrant issued by a neutral magistrate [that is] based on probable cause." TEX. CODE CRIM. PROC. ANN. art. 38.23(b).

As compared to Texas' statutory scheme, the federal exclusionary rule is judicially created and has at least three good-faith exceptions. *See State v. Anderson*, 445 S.W.3d 895, 912 (Tex. App.—Beaumont 2014, no pet.). One of those exceptions was promulgated in *Davis v. United States*, where the U.S. Supreme Court held that an officer's objectively reasonable reliance on binding court precedent at the time of a search or seizure, even if the precedent is later overruled, satisfies the good faith exception to the exclusionary rule. *Davis v. United States*, 564 U.S. 229,

241, 131 S.Ct. 2419, 2429, 180 L.Ed. 2d 285 (2011). Whether such an exception applies in Texas, however, depends upon whether the recognized exception is consistent with the plain language of article 38.23(b) and its legislative intent. *Baker v. State*, 956 S.W.2d 19, 23 (Tex. Crim. App. 1997); *see e.g.*, *Johnson v. State,* 871 S.W.2d 744, 749–51 (Tex. Crim. App. 1994) (attenuation of the taint doctrine consistent with "obtained" language in article 38.23); *Daugherty,* 931 S.W.2d at 272 (inevitable discovery doctrine inconsistent with "obtained" language in article 38.23).

In its briefing, the State relies on the exception recognized in *Davis*, 564 U.S. at 241, while openly acknowledging that the Texas Court of Criminal Appeals had not yet interpreted whether such exception would similarly apply given the plain language of Texas' statutory exception. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(b). Again, as with its earlier argument, the State cites to cases issued pre-*Jardines* holding that a dog sniff employed under a variety of circumstances was not deemed a search requiring a warrant. *See, e.g.*, *Romo*, 315 S.W.3d at 572-73; *Rodriguez,* 106 S.W.3d at 228-30; *Porter*, 93 S.W.3d at 346-47. After the State submitted its briefing, however, the Court of Criminal Appeals issued *McClintock v. State*, 541 S.W.3d 63, 66 (Tex. Crim. App. 2017), in which it considered whether article 38.23(b) would accommodate a *Davis*-type exception.

More specifically, the Court of Criminal Appeals expressly granted review of the case to clarify the reach of the statutory exception and decide in the first instance whether article 38.23(b) applied when a warrant affidavit supplied probable cause, but the calculation of that probable cause necessarily included information tainted by a prior illegality. *McClintock*, 541 S.W.3d at 66. In *McClintock*, police took a drug-sniffing dog to sniff at an apartment resident's door without a warrant, and after the dog alerted to the presence of drugs, the officers then successfully used the alert to obtain a search warrant whereupon the officers uncovered a felony amount of marijuana

inside the residence. *Id*. at 65. The trial court denied a motion to suppress after deciding that the police dog had not invaded the curtilage at the time of its alert, and thus, the use of the dog in that circumstance did not constitute a search for Fourth Amendment purposes. *Id*. Based on *Jardines*, the appellate court reversed the conviction holding that the dog-sniff resulted in an unlawful search of the curtilage, and without the information provided by the alert, the search warrant affidavit lacked sufficient evidence to support probable cause. *Id*. Invoking the *Davis*-type good-faith exception, the State appealed to the higher court arguing that because the officers relied upon then-binding legal precedent that had held that the dog sniff did *not* constitute a search for Fourth Amendment purposes, they committed no malfeasance and should not have to suffer the exclusion of evidence under the statutory exclusionary rule embodied in article 38.23(a) of the Texas Code of Criminal Procedure. *Id*. Construing the statutory language, in *McClintock* the Court of Criminal Appeals held that article 38.23(b) was itself broad enough to embrace both the fruit-of-the-poisonous-tree doctrine and the good-faith exception to the federal exclusionary rule. *Id*. at 72.

*McClintock* found that where an officer includes information in a search warrant affidavit that he knows—or should know—to be illegally obtained, then it cannot be said that said officer acted in good-faith reliance upon any warrant that may later issue that depends for its probable cause upon that tainted information. *Id*. Additionally, however, *McClintock* found that Texas' statutory language was also broad enough to accommodate a corollary conclusion. *Id*. at 72-73. An officer who reasonably believes that the information he or she submitted in a probable cause affidavit was legally obtained "has no reason to believe the resulting warrant was tainted." *Id*. at 73. Consequently, in executing the warrant, that officer "'acts in objective good faith reliance upon' the warrant," as long as the warrant itself is facially valid. *Id*. In sum, *McClintock* holds that the language of article 38.23(b) is "consistent with" an application of good-faith principles

that excuse a prior illegality, and in such circumstance, this renders an officer's reliance on a neutral magistrate's assessment of probable cause as objectively reasonable. *Id*. (quoting *Baker*, 956 S.W.2d at 23).

Pursuant to *McClintock*, article 38.23(b) applies when "the prior law enforcement conduct that uncovered evidence used in the affidavit for the warrant [was] 'close enough to the line of validity' that an objectively reasonable officer preparing the affidavit or executing the warrant would believe that the information supporting the warrant was not tainted by unconstitutional conduct." *Id*. at 73 (citing *United States v. Massi*, 761 F.3d 512, 528 (5th Cir. 2014)). Two separate requirements must be met for evidence to be admissible: (1) the prior law enforcement conduct that uncovered evidence used in the affidavit for the warrant must be "close enough to the line of validity" that an objectively reasonable officer preparing the affidavit or executing the warrant would believe that the information supporting the warrant was not tainted by unconstitutional conduct, and (2) the resulting search warrant must have been sought and executed by a law enforcement officer in good faith. *Id*. at 71-72 (citing *Massi*, 761 F.3d at 528). Applying this two-part test, *McClintock* reversed the appellate court and upheld the trial court's denial of the defendant's motion to suppress, reasoning that the *Jardines* decision had not yet been released at the time of the search, and the use of the dog to sniff for narcotics remained "close enough to the line of validity" for the Court to "conclude that an objectively reasonable officer preparing a warrant affidavit would have believed that the information supporting the warrant application was not tainted by unconstitutional conduct." *Id*. at 74. Thus, *McClintock* held that the officer's search of the front door of the apartment was executed in good-faith reliance on a facially valid warrant, which triggered the exception provided in article 38.23(b), and therefore, the fruit of the search was not subject to exclusion pursuant to article 38.23(a). *Id*.

Underscoring the absence of malfeasance, *McClintock* acknowledged that "even after *Jardines* was decided, binding precedent continues to hold that—at least in the abstract—the use of a trained canine to detect the presence or absence of illicit narcotics does not constitute a 'search' for Fourth Amendment purposes." *Id.* (citing *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005)). Because the Supreme Court did not render it "crystal clear" until its decision in *Jardines* that conducting a dog search was in fact illegal when used in a curtilage, *McClintock* held that it was "close enough to the line of validity" for the Court to conclude that "an objectively reasonable officer preparing a warrant affidavit would have believed that the information supporting the warrant application was not tainted by unconstitutional conduct." *Id.* Because article 38.23(b) accommodates the good-faith standard, the officer's later search of the apartment qualified as having been executed in "objective good faith reliance" on a warrant issued by a neutral magistrate based on probable cause. *Id.* Consequently, *McClintock* concluded that article 38.23(a)'s exclusionary rule did not apply. *Id.* at 72.

## Does Article 38.23(b) Apply Here?

Guided by *McClintock*, we now address whether the good-faith exception provided in article 38.23(b) applies in this case. Here, without a warrant, but accompanied by a dog trained to detect the odor of illegal substances, Officers Perales and Johnson knocked on the front door of Moreno's home on June 29, 2009. Like *McClintock*, this conduct occurred several years before the Supreme Court clarified in *Jardines* that police-use of a drug detection dog within a protected area of a home would in fact violate Fourth Amendment protections. *McClintock* acknowledged that it was true that there was no binding precedent prior to *Jardines* that held that a canine drug sniff conducted on the curtilage of a home was constitutional. *McClintock*, 541 S.W.3d at 74. "[F]rom the standpoint of the curtilage of a home[,]" *Jardines* did not overrule any prior Supreme Court precedent that had expressly permitted canine drug sniffs. *Id.* at 74 n.18. "Nevertheless,

15

even after *Jardines* was decided, binding precedent continues to hold that—at least in the abstract—the use of a trained canine to detect the presence or absence of illicit narcotics does not constitute a 'search' for Fourth Amendment purposes." *McClintock*, 541 S.W.3d at 74 (citing *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005)).

At the time of the knock and talk at Moreno's residence, pre-*Jardines* cases in Texas had concluded that dog sniffs taking place in a variety of locations exterior to a residence did not constitute a search or violate a reasonable expectation of privacy under the Fourth Amendment because an alert from a dog only disclosed the presence or absence of narcotics—in which there was no reasonable expectation of privacy—and did not expose non-contraband items, activity, or information that would otherwise remain hidden from public view. *See, e.g., Romo*, 315 S.W.3d at 572–73 (dog sniff occurring at the garage door and backyard fence of house was not a search under the Fourth Amendment); *Rodriguez,* 106 S.W.3d at 228–30 (dog sniff at front door of defendant's house was not a search under the Fourth Amendment and was thus lawful); *Smith v. State*, No. 01-02-00503-CR, 2004 WL 213395, at *3 (Tex. App.—Houston [1st Dist.] Feb. 5, 2004, pet. ref'd) (mem. op.) (not designated for publication) (defendant's privacy interests not infringed when officer allowed dog sniff at the garage door of defendant's house); *Porter*, 93 S.W.3d at 346–47 (dog sniff outside the front door of a house was not a search); *Kerr v. State*, No. 14-02-00569-CR, 2003 WL 21542497, at *3 (Tex. App.—Houston [14th Dist.] Jul. 10, 2003, pet. ref'd) (mem. op.) (not designated for publication) (dog sniff occurring at front door of apartment was not an illegal search). Contrary to these cases, however, *Jardines* clarified that the reasonable-expectation of privacy was itself "*added to*, not *substituted for*," the original property-based understanding of the Fourth Amendment, and therefore, it would not be necessary to consider whether an expectation of privacy exists "when the government gains evidence by physically

16

intruding on constitutionally protected areas." *Jardines*, 569 U.S. at 11. Nonetheless, as explained in *McClintock*, the U.S. Supreme Court had not made it "crystal clear," prior to March 2013, that a dog sniff occurring in the curtilage qualified as a "search" within the meaning of the Fourth Amendment. *McClintock*, 541 S.W.3d at 74. Because of the subtlety of the distinction, *McClintock* found that the conduct fell "close enough to the line of validity" for a reasonable police officer to have believed that such conduct was in fact lawful. *Id.*

On review of the record, Detective Perales and Officer Johnson both testified during the suppression hearing that warrantless dog sniffs occurring in this manner were standard operating procedure in the El Paso Sherriff's Office at the time of the search of Moreno's residence, and given their training, they both understood at that time, that such conduct was not prohibited or illegal. Construing their testimony in the light most favorable to the trial court's ruling, a reasonable basis existed for the officers' belief that use of a warrantless dog sniff on the front door of a home was then permitted, even though *Jardines* later clarified that such conduct resulted in a constitutional violation. We conclude that it was "close enough to the line of validity" that an objectively reasonable officer preparing the affidavit or executing the warrant would believe that the information included was not tainted by unlawful conduct despite the use of a drug-detection dog within the home's curtilage. *See id*. at 73–74; *see also State v. Davis*, No. 05-15-00232-CR, 2018 WL 1531441, at *4–6 (Tex. App.—Dallas Mar. 29, 2018, no pet.) (op. on remand) (designated for publication) (in a pre-*Jardines* search, officers who approached the front door of the defendant's house with a narcotics-sniffing dog had a good-faith basis "close enough to the line of validity" to believe their behavior was legal to trigger the exclusionary rule under article 38.23(b) and render the fruit of the subsequent search of the house pursuant to a warrant untainted).

Guided by *McClintock*, we conclude that the officers here did not have the benefit of the

*Jardines* ruling at the time of their search, which later clarified that such conduct was constitutionally prohibited based on a physical invasion of Moreno's protected property. As such, we conclude that (1) the prior law enforcement conduct that uncovered evidence used in the affidavit was close enough to the line of validity that an objectively reasonable officer preparing the affidavit or executing the warrant would believe that the information supporting the warrant was not tainted by their unconstitutional conduct; and (2) the resulting search warrant was sought and executed by officers acting in good faith. With inclusion of the dog alert, the affidavit provided sufficient information to establish probable cause. Accordingly, the officers' subsequent search of Moreno's home was executed in objective good faith reliance on a warrant issued by a magistrate based on probable cause. Thus, we conclude that article 38.23(b) of the Texas Code of Criminal Procedure applies and the trial court did not err by denying Moreno's motion to suppress evidence. Moreno's sole issue is overruled.

## CONCLUSION

We affirm the judgment of the trial court.

GINA M. PALAFOX, Justice

February 20, 2019

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)